623 A.2d 266

DIVISION 819, AMALGAMATED TRANSIT UNION, PLAINTIFF–
RESPONDENT, v. NEW JERSEY TRANSIT CORPORATION,
AN INSTRUMENTALITY OF THE STATE OF NEW JERSEY,
NEW JERSEY TRANSIT BUS OPERATIONS, INC., A WHOLLY-
OWNED SUBSIDIARY OF NEW JERSEY TRANSIT CORPORA-
TION, DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued March 24, 1993—Decided April 8, 1993.

Before Judges KING, BRODY and LANDAU.

*David S. Griffiths,* Deputy Attorney General, argued the cause for appellants (*Robert J. Del Tufo,* Attorney General, attorney; *Mr. Griffiths,* on the brief).

*Richard P. Weitzman* argued the cause for respondent (*Weitzman & Weitzman,* attorneys; *Mr. Weitzman,* on the brief).

The opinion of the court was delivered by

LANDAU, J.A.D.

Defendant, New Jersey Transit Corporation (NJT), appeals from a judgment of the Superior Court, Law Division declaring that it "acquired" Monmouth County Bus Lines, Inc. (MBL) and, therefore, by operation of *N.J.S.A.* 27:25-14f, became obliged to assume and observe the pre-existing collective bargaining agreement between MBL and certain of its employees represented by Amalgamated Transit Union. The order required that NJT continue to employ those Amalgamated members if NJT directly, or by contract with a private entity, maintains service on the MBL routes.

We reverse the trial court's judgment of November 17, 1992 and remand for further proceedings because, under the facts of this case, there was no "acquisition" within the meaning of *N.J.S.A.* 27:25-14f.

Division 819, Amalgamated Transit Union (Amalgamated) represents certain MBL employees. MBL entered into its most recent contract with NJT to provide busline service in Monmouth County from July 1, 1990 through June 30, 1993.[1] The contract was terminable at will by either party upon proper notice. Pursuant to separate leases, MBL was permitted to utilize NJT-owned buses and other equipment. MBL entered independently into a three year labor agreement with Amalgamated expiring on June 30, 1993. NJT is not a signatory.

---

[1] Previous subsidized contracts between MBL and NJT or its predecessor, the Commuter Operating Agency, date back to 1979.

Owing to "transgressions" by MBL's management not detailed in this record,[2] NJT severed its contractual relationship with MBL in July, 1992, and took possession of its rolling stock, which had been made available to MBL.

In order to maintain continuous service in the affected area, NJT awarded a temporary contract, expiring on October 31, 1992, to Jersey Shore Transportation, which began operating the NJT buses previously supplied to MBL, on the routes which MBL had serviced.

By the end of October, 1992, NJT awarded a fixed-price contract for operation of the former MBL bus routes, following receipt of competitive proposals. The award was made to a private entity, the TCT Corporation, for a contract period of 41 months. As of November 1, 1992, TCT commenced operation.

Earlier, in August, 1992, Amalgamated had filed its five count Verified Complaint alleging in part that:

(1) NJT's termination of its contract with MBL and repossession of the buses and equipment it supplied to MBL constituted an acquisition within the meaning of *N.J.S.A.* 27:25–14f and became obliged to honor the Union's Labor Agreement with MBL and reemploy the employees of the Union.

(2) NJT, in awarding a contract to a separate entity to furnish public transportation without complying with *N.J.S.A.* 27:25–14f violated the provisions of *N.J.S.A.* 27:25–14e.

(3) The union employees are entitled to relief under *N.J.S.A.* 27:25–14g.

(4) NJT is required to arbitrate its dispute with the Union pursuant to a Section 13(c)[3] Agreement.

(5) Jersey Shore Transportation, Inc. has an interest in the subject matter of the dispute and is joined as a party in the action pursuant to *R.* 4:28–1.4

---

[2] The State Commission of Investigation conducted an investigation into these "transgressions" and has published a March, 1993 report entitled "New Jersey Transit's Bus Subsidy Program". The report indicates that the information gathered has been referred to the Attorney General for consideration of possible criminal charges.

[3] This refers to Section 13(c) of the Urban Mass Transportation Act of 1964 (49 U.S.C.A.App. Sec. 1609), pursuant to which NJT's predecessor, the Commuter Operating Agency entered into an agreement with Amalgamated.

[4] Jersey Shore has since been dismissed from the action.

By agreement of the parties, only issues presented under (1) and (2) above were considered on the return of the Order to Show Cause. Disposition of Counts (3) and (4) was held in abeyance at that time, and in the order for judgment.[5]

The judge rendered a tentative oral decision stating he was "95% certain" that he would find NJT to have acquired MBL under *N.J.S.A.* 27:25–13 & 14. Citing section 13, he said:

> the corporation shall acquire by purchase, condemnation, and lease gift and the magic word is otherwise. And I think the otherwise aspect of this is the fact that New Jersey Transit, in essence, by creating all the assets, letting these 40 or so employees—not that they let them obviously, but just that these 40 or so employees were using the assets of New Jersey Transit, it is a very easy thing to *de facto* condemn....

In an October 28, 1992 letter opinion which relied heavily upon *Matter of NJ Transit Bus Operations, Inc.*, 125 *N.J.* 41, 592 *A.*2d 547 (1991), the judge found that, even though NJT was not a signatory to the collective bargaining agreement between MBL and Amalgamated, *N.J.S.A.* 27:25–13 and 14 required it to assume "the good faith obligation of negotiating with Monmouth Bus Union employees." *N.J.S.A.* 27:25–13 was held to require that NJT must preserve and protect the status of MBL's former bus drivers if it "condemns" or "otherwise" acquires such a contracting party. Although NJT did not institute any condemnation proceedings, the court determined that a *"de facto"* acquisition occurred when, upon termination of MBL's contract, NJT repossessed all of the rolling assets it provided to MBL over the years of their agreement. It was held that this constituted, "in effect" an acquisition of all of the important transportation assets of the company, triggering a good faith obligation under *N.J.S.A.* 27:25–13 for NJT to recog-

---

[5] The language of the judgment deferred ruling on the remaining issues raised in the complaint, and purported to retain jurisdiction to dispose of those issues if necessary. Both parties have regarded this as an appeal from final judgment inasmuch as the remaining issues would be mooted, assuming an affirmance. Because of the public importance of the issues raised, we grant leave to appeal, on our own motion, *nunc pro tunc. See R.* 2:4–4(b)(2); Pressler, *Current N.J. Court Rules,* Comment 2 on *R.* 2:4–4(b)(2) (1993).

nize the employees' bargaining agent, and to continue to honor MBL's contract with Amalgamated.

On November 17, 1992 a judgment was entered which:

DECLARED and ADJUDICATED that on or about July 30, 1992, defendant New Jersey Transit Corporation ("NJT"), by acquisition within the meaning and intent of *N.J.S.A.* 27:25–14, gained control of all or substantially all of the assets of a private entity, Monmouth Bus Lines, Inc., which had previously operated certain bus transportation routes in Monmouth County, New Jersey, which acquisition left Monmouth Bus Lines, Inc. with no effective business operations; and it is further

DECLARED and ADJUDICATED that by virtue of the action taken by defendant NJT in its acquisition of Monmouth Bus Lines, Inc. this defendant became obliged to assume and observe the existing Labor Contract between Monmouth Bus Lines, Inc. and plaintiff, Division 819, Amalgamated Transit Union, for its remaining term, pursuant to the provisions of *N.J.S.A.* 27:25–14f.; and it is further

DECLARED and ADJUDICATED that on or about July 30, 1992, defendant NJT undertook to continue the provision of the public transportation services on the routes previously operated by Monmouth Bus Lines, Inc. whereby, pursuant to *N.J.S.A.* 27:25–14f, this defendant was obliged to transfer all of the employees of Monmouth Bus Lines, Inc. to the employment of such entity as it chose to continue to provide the said public transportation services, appointing these employees to comparable positions without examination, subject to all of the applicable provisions of the New Jersey Public Transportation Act of 1979 (*N.J.S.A.* 27:25–1, *et seq.*) and, in particular, those provisions set forth under *N.J.S.A.* 27:25–14f.; and it is further

DECLARED and ADJUDICATED that on or about July 30, 1992 and continuing to date defendant N.J. Transit Corp. have failed and refused to recognize their aforesaid obligations under *N.J.S.A.* 27:25–14f. whereby it is further Ordered that:

1. Defendants' motion(s) to dismiss the first two Counts of plaintiff's Complaint be and the same are hereby denied;

2. Defendant NJT, upon continuing to provide or contract for the operation of bus transportation services on the routes formerly operated by Monmouth Bus Lines, Inc. either by defendant NJT, New Jersey Transit Bus Operations, Inc. or by any other private entity, shall require the operator of these public transportation services to assume and observe the existing Labor Contract between plaintiff Union and Monmouth Bus Lines, Inc. for its remaining term and shall further require the transfer to the employment of the operator of the said public transportation services of the (former) employees of Monmouth Bus Lines, Inc. covered under the said Labor Contract and represented by plaintiff, in accordance with the provisions of *N.J.S.A.* 27:25–14f;

3. Defendant NJT shall proceed to arbitrate any and all outstanding grievances asserted by plaintiff Union related to defendant NJT's acquisition of the assets of Monmouth Bus Lines, Inc., and its failure to comply with the

provisions of *N.J.S.A.* 27:25–14f., the said arbitration to proceed in the manner as provided for in the Labor Contract (attached to plaintiff's Complaint as Exhibit A) provided that the Union, as the moving party, may proceed directly to arbitration as set forth under Article XXVI Section 3 of the Labor Contract by submitting its request to the New Jersey State Board of Mediation for the appointment of an arbitrator in accordance with the rules and procedures of that Board, which request shall be made within 15 working days after the entry of this Order; and

4. The Court shall retain jurisdiction of this matter as to any questions related to compliance by defendant, NJT with the provisions of this Order and as to any issues which may remain open as related to claims made by plaintiff under the additional Counts of its Complaint.

On December 4, 1992, NJT filed a Notice of Appeal from Order and simultaneously applied for a stay of that order pending appeal, pursuant to *R.* 2:9–8. The request for stay was denied by order of this Court on December 7, 1992, but granted by the Supreme Court on December 22nd.

We then granted NJT's Notice of Motion to accelerate disposition of the appeal, because of the public importance of the issues presented.

## History

In 1979 the Legislature passed the Public Transportation Act (*N.J.S.A.* 27:25–1 to 24), creating New Jersey Transit, a public corporation, for the purpose of converting New Jersey's mass-transit system from one of private enterprise to one owned and operated by the State. *See Matter of N.J. Transit Bus Operations, Inc.,* 125 *N.J.* 41, 592 *A.*2d 547 (1991). NJT has created operating divisions to provide public bus and rail transportation service. It has the power to acquire private entities. It also contracts pursuant to *N.J.S.A.* 27:25–6b for private bus companies to provide bus service.

The Public Transportation Act was enacted to address the problem of a heavily subsidized, but inefficient, private mass transportation system. Concern for legitimate interests of affected labor unions led to the inclusion of section 14, which addresses the preservation of labor agreements and protection of employees of "acquired" private entities. *Matter of N.J.*

*Transit, supra,* 125 *N.J.* at 43–44, 592 *A.*2d 547. Although the Supreme Court has offered guidance respecting the scope of negotiations between NJT and its union employees from formally acquired private entities, the Court has not had occasion to consider whether the Legislature intended that recapture of NJT assets upon proper termination of a private operator's contract constitutes an "acquisition" under *N.J.S.A.* 27:25–14f.

## Discussion

NJT contends that a straightforward reading of the terms of *N.J.S.A.* 27:25–14a. and f. require a finding that NJT did not acquire MBL, and hence no obligation arose for NJT to hire the former employees of MBL or to assume the MBL–Union labor agreement. We agree.

*N.J.S.A.* 27:25–14f provides that:

f. *Upon acquisition by the corporation of a public or private entity which provides public transportation services,* the corporation shall assume and observe all existing labor contracts of such entity for their remaining term. All of the employees of the acquired entity, as defined in subsection a., shall be transferred to the employment of the employer and appointed to comparable positions without examination subject to all the rights and benefits of this act, and these employees shall be given sick leave, seniority, vacation, and pension credits in accordance with the records and labor agreements of acquired entity. [emphasis supplied]

The trial judge elected to determine what the Legislature meant by "acquisition" by referring to the delegation of powers language of *N.J.S.A.* 27:25–13 which provides:

a. The corporation shall have the power to acquire by purchase, condemnation, lease, gift or *otherwise,* on terms and conditions and in the manner it deems proper, for use by the corporation or for use by any other public or private entity providing public transportation services, all or part of the facility, plant, equipment, property, shares of stock, rights of property, reserve funds, employees pension or retirement funds, special funds, franchises, licenses, patents, permits and papers, documents and records of a public or private entity providing public transportation services within the State.

b. The corporation shall also have the power to acquire by purchase, condemnation, lease, gift or *otherwise,* on the terms and conditions and in the manner it deems proper, any land or property real or personal, tangible or intangible which it may determine is reasonably necessary for the purposes of the corporation under the provisions of this act. [emphasis supplied]

Relying upon the phrase "or otherwise", the judge concluded that there had been an acquisition in this case. However, such reliance was misplaced because it ignored the specific definition contained in *N.J.S.A.* 27:25–14a. That subsection provides:

*"Acquisition by the corporation of a public or private entity which provides public transportation services," or words of like import,* means an acquisition effected by a purchase or condemnation of all of or a controlling interest in the stock or other equity interest of the entity, or purchase or condemnation of all or substantially all of the assets of the entity. [emphasis supplied]

The legislature specifically chose not to include acquisitions by "lease, gift or otherwise" in the language of subsection 14a. Furthermore, the term "employee" has been defined not to "include an employee of a public or private entity ... which provides public transportation services pursuant to operating rights granted by a regulatory body or pursuant to authority arising from contractual agreements entered into with the corporation pursuant to section 6 [*N.J.S.A.* 27:25–6] of this act" *N.J.S.A.* 27:25–14a.

To accept the redefinition of "acquisition", as proposed by Amalgamated and adopted by the trial judge, would undermine the specific legislative grant to NJT to contract for private provision of bus services under *N.J.S.A.* 27:25–6. Absent specific legislative modification of the subsection 14a definition, we decline to hold that because NJT provided its buses and other tangibles to MBL, a contracting private bus corporation, their contractual relationship, terminable by either party, was transformed upon termination, into an "acquisition".

NJT did not take or condemn property owned by MBL. It terminated for cause a contractual arrangement and repossessed buses it had always owned. Neither the service agreement and bus leases, nor their termination, constituted a purchase, condemnation or acquisition of MBL. In consequence, NJT has no present obligation to MBL employees under *N.J.S.A.* 27:25–14f.

Amalgamated also relies upon *N.J.S.A.* 27:25–14e, although this subsection was not specifically addressed by the trial judge's opinion. *N.J.S.A.* 27:25–14e provides in part:

> In acquiring, operating, or contracting for the operation of public transportation services, the corporation shall make provision to assure continuing representation for collective negotiations on behalf of employees, giving due consideration to preserving established bargaining relationships to the extent consistent with the purposes of this act. . . .

Amalgamated's reliance upon this subsection is misplaced, however, because it ignores the definition of "employee" contained in *N.J.S.A.* 27:25–14a. As used in section 27:25–14 (including subsection e), the word "employee" means

> (1) an employee of the corporation [NJT], or
>
> (2) an employee of any public or private entity acquired, owned or operated by the corporation [NJT]
>
> "Employee" does not include an employee of a public or private entity, other than as provided in subsection g and paragraphs (1) and (2) of this subsection, which provides public transportation services pursuant . . . to authority arising from contractual agreements entered into with the corporation pursuant to section 6 of this act.

Amalgamated conceded in its complaint that, upon contracting with MBL, NJT complied with the provisions of *N.J.S.A.* 27:25–14e. However, it urges that the obligation to preserve established bargaining relationships compels NJT to require assumption of the same union employees and union contract by new bidders who wish to provide contract services. We do not read the language of *N.J.S.A.* 27:25–14e to say that upon *terminating* a contractual relationship, NJT is required to compel a new operator to assume the bargaining relationships established by the terminated contractor. Assuming *bona fides* of the termination, we doubt that this can be compelled solely by state legislation.[6] As no acquisition contemplated by 14f has occurred, the labor protections afforded by subsections 14e and 14f do not apply to MBL's former employees and their bargaining agent.

---

[6] In view of our ruling on the "acquisition" issue, it is unnecessary for us to resolve NJT's argument that the National Labor Relations Act, 29 *U.S.C.A.* § 151 to 169, precludes such action.

Amalgamated asks that we engage in legislative interpretation despite the fact that the language of the statute is unambiguous. Were we to adopt the interpretation of *N.J.S.A.* 27:25-14f urged by Amalgamated, the legacy of an incompetent, inefficient operator would necessarily be passed to both the fare-paying and tax-paying public. We are unwilling to read such an intent into the statute absent an unambiguous expression by the Legislature, and so reverse.

As previously noted, the judgment expressly refrained from considering the issues raised in Counts (3) and (4) of Amalgamated's complaint. Count (3) involved *N.J.S.A.* 27:25-14g, which provides certain employee remedies when routes are transferred from one entity to another.[7] Count (4) was based on a separate agreement entered into pursuant to the Federal Urban Mass Transportation Act.

We express no opinion as to applicability of subsection 14g as it was neither briefed nor argued by the parties, nor considered by the court below. So, too, with the separate arbitration issue raised in Count (4). The arbitration ordered in the judgment under review was based solely upon analysis of the New Jersey statutes enumerated therein, and not under section 13(c) of the Urban Mass Transportation Act as asserted in Court (4) of the Complaint. We leave to the Law Division consideration of the

---

7   Except as provided herein, employees whose positions are worsened with regard to wages, hours, seniority and other terms and conditions of employment, shall be protected for a period of 5 years from the date of the first acquisition by the corporation. This time limitation does not apply to *protections afforded to employees whose positions are worsened as a result of acquisitions or contracts which transfer responsibility for the provision of substantially similar motorbus regular route or paratransit service from one entity, including the corporation, to another.* With regard to any acquisition or contract transferring service responsibility, only claims arising from actions taken within 18 months therefrom shall be eligible for protection.

Protections and procedures to implement such protections shall be provided in accordance with the terms of the agreement entered into between the Commuter Operating Agency and Amalgamated Transit Union on March 2, 1976; except that no protective allowances or other benefits shall exceed 3 years duration. [emphasis supplied]

effect of the within opinion upon the issues raised in Counts (3) and (4).

The judgment under review is reversed. We remand to the Law Division, Essex County for further proceedings consistent with the Complaint.